## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NATHANIEL KENYON,        :     Civil No.  1:20-CV-1372
                          :
          Plaintiff      :     (Magistrate Judge Carlson)
                          :
     v.                  :
                          :
ANDREW M. SAUL        :
Commissioner of Social Security    :
                          :
         Defendant     :

## MEMORANDUM OPINION

## I.    Introduction

Nathaniel Kenyon's Social Security appeal calls upon us to consider longstanding principles regarding the duty of an Administrative Law Judge (ALJ) to fully articulate the basis of a residual functional capacity (RFC) assessment, particularly when that RFC rejects the medical opinions on the record before the ALJ. We are then invited to apply these settled tenets to the Commissioner's current regulations governing the evaluation of medical opinions.

Kenyon asserted that he was disabled due to the profoundly impairing effect of an anxiety disorder. Three treating sources and one state agency expert opined on the impact that Kenyon's well-documented history of anxiety attacks would have on his ability to work. All three treating sources found that this emotional impairment

rendered Kenyon disabled. In sharp contrast, the state agency expert did not even deem Kenyon's anxiety to be a severe impairment.

In denying Kenyon's disability application, the ALJ essentially discounted all of these opinions, finding that the opinions of Kenyon's primary care physician and counselor were not at all persuasive (Tr. 23, 24), and concluding that the judgment of another primary care provider only has "some persuasive value in establishing some moderate mental limitations." (Tr. 23). The ALJ also seems to have largely discounted the state agency expert opinion, describing that opinion in a somewhat enigmatic fashion as "not . . . entirely persuasive." (Tr. 24). The ALJ then fashioned an RFC that was unmoored to any medical opinion and in fact contradicted and rejected all of these opinions, stating in a single sentence that this RFC was "supported by the claimant's counseling records and associated examinations . . ., psychiatric treatment notes . . ., and the claimant's activities of daily living." (Tr. 24).

While the Commissioner contends that this result was justified under the new regulations governing evaluation of medical opinions, we believe that these new regulations do not relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinions evaluation. Mindful of the fact that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant," and recognizing that "even though an ALJ is not bound to accept the statements of any medical expert, he may not substitute his own judgment for that of a physician," Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), we conclude that the ALJ's burden of articulation has not been met in this appeal, and remand this case for further consideration and evaluation of the medical opinion evidence.

## II.  Statement of Facts and of the Case

On July 28, 2017, Nathaniel Kenyon applied for disability insurance benefits alleging that he was totally disabled due to anxiety, depression, post-traumatic stress disorder, and bipolar disorder. (Tr. 15, 17). Kenyon was born in July of 1991, and was 25 years old at the time of the alleged onset of his disability. (Tr. 25). The emotional impairments claimed by the plaintiff were well documented in Kenyon's treatment records. Those records also reflected that Kenyon's anxiety and depression increased when he attempted to work, or faced environmental changes such as working with a new counselor. (Tr. 507, 635, 660-61). Kenyon's treatment history was also marked by frequent episodes of crying, depression, and on-going reports of heightened anxiety. (Tr. 501, 507, 520-21, 635).

As early as April of 2016, Kenyon was being treated for depression and anxiety. (Tr. 302). By September of 2017, Kenyon reported a decline in his mental state as his anxiety was getting worse. (Tr. 626). In December of 2017, Kenyon's care-givers were reporting that he presented with obsessive worries, daily anxiety, and depression which manifested itself through very low energy on Kenyon's part. (Tr. 660-61).

Kenyon continued to experience these worsening emotional impairments throughout 2018. Thus, in July of 2018, treatment notes described Kenyon as tearful and depressed. (Tr. 501). Two months later, in September of 2018, Kenyon reported that he had attempted to work but had become overwhelmed and reduced to tears by the anxiety that accompanied employment after only three days of work. (Tr. 507, 635). In October of 2018, Kenyon's caregivers were still documenting that he was experiencing depression, frequent crying, and flashbacks. (Tr. 501). One month later, in November of 2018, Kenyon's treatment providers described him as very anxious, and noted that as a result of his emotional impairments he was delayed in his responses to their inquiries. (Tr. 680).

Based upon their clinical experience with the plaintiff, three treating sources also provided medical statements assessing Kenyon's ability to perform work on a

sustained basis given the emotional impairments that he experienced. All three of these treating sources found that Kenyon's emotional impairments were disabling.

For example, as early as April 28, 2016, Dr. Renzi, Kenyon's primary care physician, opined that Kenyon's anxiety disorder would make it very difficult and medically necessary for the plaintiff to miss work during emotional flare-ups. (Tr. 455-56). Dr. Renzi, who had an extended longitudinal treatment history with Kenyon, later stated in February of 2019 that the plaintiff was extremely impaired in all spheres of workplace functioning due to his persistent anxiety disorder, would be off-task 1/3 of the time at work, and would miss 3 days or more of work each month due to this anxiety disorder. (Tr. 664-65). These findings were tantamount to a determination that Kenyon was disabled.

Anika Webb, a physician assistant in Dr. Renzi's practice, also documented a significant decline in Kenyon's mental state between 2017 and 2018. Thus, in December of 2017, P.A. Webb found that Kenyon experienced extreme anxiety, which moderately impaired his ability to make complex work-related decisions, but otherwise concluded that his mental health impairments were mild. (Tr. 605-07). However, by October 2018, P.A. Webb was reporting that Kenyon's condition and emotional stability had declined significantly. According to P.A. Webb, by October 2018, Kenyon was extremely limited in his ability to handle stress, interact with the

public and supervisors, and maintain concentration, persistence, and pace. P.A. Webb also opined in the Fall of 2018 that Kenyon would be off-task 1/3 of the time at work, and would miss 3 days or more of work each month due to this anxiety disorder. (Tr. 499-500).

These clinical findings were echoed by a third treating source, Teresa Allen, the plaintiff's counselor, who also completed a mental health questionnaire in October of 2018. (Tr. 646-47). This treating source opinion also found that Kenyon was extremely limited in his ability to handle stress, interact with the public and supervisors, and perform tasks at a consistent pace while maintaining attendance at work. In fact, Ms. Allen concluded that Kenyon would be off-task 1/3 of the time at work, and would miss 3 days or more of work each month due to this anxiety disorder. (Id.)

Thus, Kenyon's three treating sources each reported in a highly consistent fashion that Kenyon suffered from emotional impairments which were disabling in the workplace. Taken together, these three treating source opinions described a man in severe emotional decline who, by late Fall of 2018, was unable to meet the demands of the workplace due to his anxiety disorder. In stark contrast to this treating source consensus was the view of the non-examining state agency expert,

Dr. Galdieri, who opined in September of 2017 that Kenyon did not experience any severe emotional impairments whatsoever. (Tr. 91).

It was against this clinical backdrop that an ALJ conducted a hearing regarding Kenyon's disability application on April 2, 2019. (Tr. 32-64). Kenyon and a vocational expert both appeared and testified at this hearing. (Id.) In his testimony, Kenyon described the severity of his emotional symptoms in terms that were entirely consistent with the consensus views of this treatment providers, describing daily anxiety attacks, episodes of depression and crying, and an inability to function due to stress. (Tr. 38-42).

Following this hearing on May 22, 2019, the ALJ issued a decision denying Kenyon's application for benefits. (Doc. 12-26). In that decision, the ALJ first concluded that Kenyon satisfied the insured status requirements of the Act. (Tr. 17). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Kenyon suffered from the following severe impairments: major depressive disorder, anxiety disorder, post-traumatic stress disorder, and bipolar disorder. (Tr. 17).

At Step 3 the ALJ determined that Kenyon did not have an emotional impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 19-20). The ALJ then fashioned an

RFC that was unmoored to any medical opinion and, in fact, contradicted and rejected all of these medical opinions, finding that Kenyon could perform work at all exertional levels in a simple routine workplace environment. (Tr. 20).

In reaching this conclusion, the ALJ essentially discounted all of the medical expert opinions. Thus, the ALJ concluded that Dr. Renzi's opinions were "not persuasive," rejecting the views of the treating source who had dealt directly with Kenyon for nearly three years. (Tr. 23). The ALJ likewise concluded that Ms. Allen's treating source opinion was not persuasive in view of the record. (Tr. 24). As for the opinions expressed by Physician Assistant Webb, the ALJ gave some weight to her initial assessment of moderate limitations on Kenyon's part but entirely discounted her October 2018 conclusion that Kenyon's emotional impairments were disabling. (Tr. 23). In reaching this result, which rejected this treating source consensus, the ALJ never addressed the striking consistency of these opinions, which all reflected a severe decline in Kenyon's mental state by the Fall of 2018. Finally, and somewhat enigmatically, the ALJ stated that the opinion of the state agency expert, Dr. Galdieri, who opined that Kenyon suffered from no severe mental impairments, was "not . . . entirely persuasive." (Tr. 24). While this phrasing suggested that the opinion had some persuasive value, but was not entirely persuasive, this suggestion was belied by the ALJ's complete rejection of Dr. Galdieri's conclusion that Kenyon

suffered from no severe impairments. Instead, the ALJ concluded that Kenyon experienced multiple severe mental impairments.

Having rejected every medical opinion, the ALJ crafted this residual functional capacity assessment for Kenyon based largely upon her own lay evaluation of the medical evidence, in a manner that contradicted every treating source opinion, stating in a single sentence that this RFC was "supported by the claimant's counseling records and associated examinations . . ., psychiatric treatment notes . . ., and the claimant's activities of daily living." (Tr. 24).

The ALJ then found that Kenyon could not perform his past work, but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 24-26). Having reached these conclusions, the ALJ determined that Kenyon had not met the demanding showing necessary to sustain his claim for benefits and denied this claim. (Tr. 26).

This appeal followed. (Doc. 1). On appeal, Kenyon challenges the adequacy of the ALJ's explanation of this RFC determination, which rejected every medical source opinion in favor of a lay assessment of the clinical evidence by the ALJ. While the Commissioner contends that this result was justified under the new regulations governing evaluation of medical opinions, we disagree. These new regulations changed the analytical paradigm for assessing medical opinions but they

did not authorize lay medical determinations by ALJs. Nor do these new regulations relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation.

Rather, in our view, this case illustrates the settled principles that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant," and "even though an ALJ is not bound to accept the statements of any medical expert, he may not substitute his own judgment for that of a physician," Biller, 962 F. Supp. 2d at 778–79. Accordingly, as discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal, and remand this case for further consideration and evaluation of the medical opinion evidence.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis

deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

13

**B.     Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D.

15

Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); <u>Mason</u>, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller</u>, 962 F.Supp.2d at 778–79 (quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.    Legal Benchmarks for the ALJ's Assessment of Medical Opinions

Kenyon filed his disability following a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations that defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court has aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency;

relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the

different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

It is against these legal benchmarks that we assess the instant appeal.

### D.   This Case Should Be Remanded for Further Consideration of the Medical Opinion Evidence.

This case presents a striking circumstance. In fashioning an RFC for the plaintiff and denying this disability claim, the ALJ has essentially rejected every medical opinion. Instead, relying upon her subjective evaluation of Kenyon's treatment records, the ALJ crafted an RFC that is unhinged to any medical opinion and contradicts all of the medical opinions in the administrative record. The ALJ has also rejected a treating source consensus from three different medical sources who had cared for Kenyon over a span of years and had found Kenyon's emotional impairments to be disabling. In our view, the ALJ's justification for this course of action—which consisted of a critique of every medical opinion coupled with a single sentence that this RFC was "supported by the claimant's counseling records and associated examinations . . ., psychiatric treatment notes . . ., and the claimant's activities of daily living" (Tr. 24)—is insufficient to justify discounting all of the medical opinions in this case. Therefore, we will remand for a more fulsome consideration of this medical opinion evidence.

22

While we appreciate the Commissioner's argument that the analytical paradigm that applies to evaluating medical opinions fundamentally changed in March of 2017, in our view that change does not alter the significance of medical opinion evidence to a disability analysis. Nor does that paradigm shift discount the longstanding legal principles which called for a clear articulation of the ALJ's rationale in making a disability determination. Likewise, the new medical opinion evidence evaluation regulations do not alter the longstanding proposition that "[b]ecause they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician." Biller, 962 F.Supp.2d at 779.

Moreover, in the absence of some further explanation and articulation of its rationale, the ALJ's decision cannot be reconciled with the revised medical opinion regulations that the ALJ was obliged to follow. Those regulations eschew any hierarchical ranking of opinions, but call upon ALJ's to evaluate medical opinions against the following benchmarks:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

(3) Relationship with the claimant. This factor combines consideration of the issues in paragraphs (c)(3)(i) through (v) of this section.

(i) Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(ii) Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s).

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s).

(v) Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.

20 C.F.R. § 404.1520c.

In this case, a dispassionate assessment of the treating source consensus that Kenyon was totally disabled as of the Fall of 2018 against these regulatory criteria casts doubt upon the adequacy and accuracy of the ALJ's decision. At the outset, all

of the factors relating to Kenyon's relationship with these medical sources favored recognizing the persuasive power of these opinions. Thus, Kenyon had a longstanding, first-hand treatment relationship with these caregivers that involved repeated contacts over several years. Therefore, the treating sources had a uniquely valuable longitudinal perspective on Kenyon's mental state, a fact which the ALJ failed to acknowledged in her analysis.

Further, given that "supportability . . . and consistency . . . are the most important factors [to] consider when [] determine[ing] how persuasive [to] find a medical source's medical opinions . . . to be," 20 C.F.R. § 404.1520c(b)(2), we find that the ALJ's evaluation of these treating source opinions failed to adequately address a critical factor: taken together, the opinions of Dr. Renzi, P.A. Webb, and Counselor Allen are remarkably consistent in their evaluation of Kenyon's mental state and ability to work in the Fall of 2018 and early 2019. From three different treatment perspectives, each of these sources reached consistent conclusions regarding the degree of Kenyon's impairment, the extent to which he would be off-task, and the degree to which his impairments would result in chronic absenteeism from work. Given that consistency of opinions is one of the most important factors to assess in this medical opinion analysis, the ALJ's failure to address, or even acknowledge in a meaningful way, these remarkably consistent opinions requires a

remand when all of the consistent treating opinions are rejected in favor of the ALJ's own *ad hoc* and medically unsupported RFC determination.

Further, the ALJ's treatment of the only medical opinion that favored denial of this claim, Dr. Galdieri's state agency expert opinion, does not cure these shortcomings in the evaluation of the persuasive power of these consistent opinions by multiple medical sources who enjoyed a longstanding treating relationship with Kenyon. As we have noted, there is an enigmatic quality to this aspect of the ALJ's decision. The ALJ rejected Kenyon's disability claim but stated that the only medical opinion that supported denial of the claim—Dr. Galdieri's opinion that Kenyon suffered from no severe mental impairments—was "not . . . entirely persuasive." (Tr. 24). Moreover, contrary to the suggestion that this state agency expert opinion was somewhat persuasive, it seems that the ALJ actually found this opinion to be entirely unpersuasive since the ALJ completely rejected Dr. Galdieri's opinion that Kenyon suffered from no severe impairments, finding instead that Kenyon experienced multiple severe mental impairments.

In our view, even under the new regulations governing evaluation of medical opinion evidence, more is needed by way of explanation before an ALJ can reject all medical opinions in favor of her own subjective evaluation of the treatment records. Since the ALJ's burden of articulation is not met in the instant case, this

matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    Conclusion

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

May 19, 2021